IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION



CURTIS L McCOY,

    Plaintiff,

v.                                       Civil Action No. 3:08cv555

CAPTAIN ROBINSON, *et al.*,

    Defendants.

## MEMORANDUM OPINION

Plaintiff, a Virginia inmate proceeding *pro se*, filed this action. The matter is currently proceeding on Plaintiff's amended complaint (Docket No. 32), wherein he alleges that his rights under the Eighth Amendment[1] were violated while confined in the Richmond City Jail ("the Jail") by Captain Robinson,[2] Nurse Gaines, Sheriff C.T. Woody, and Deputy Davis. Specifically, Plaintiff contends that he is entitled to relief upon the following grounds:

| | |
|---|---|
| Claim 1 | Captain Robinson failed to provide Plaintiff with adequate medical care for a "staph infection 'MSRA Cellulitis.'" (Am. Compl. 2.) |
| Claim 2 | Nurse Gaines failed to provide Plaintiff with adequate medical care for a "staph infection 'MSRA Cellulitis.'" (Am. Compl. 2.) |
| Claim 3 | Deputy Davis failed to ensure that Plaintiff received adequate medical care for a "staph infection 'MSRA Cellulitis.'" (Am. Compl. 2.) |
| Claim 4 | (a) Sheriff Woody is liable for the inadequate medical care Plaintiff received at the hands of Deputy Davis, Captain Robinson, and Nurse Gaines. |
| | (b) Sheriff Woody failed to provide Plaintiff with a clean and sanitary living environment and failed to maintain adequate sanitary standards with respect to the Jail's barber. |

---

[1] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

[2] Captain Robinson is the Manager of Medical Services at the Jail.

The matter is before the Court on motions for summary judgment filed by Woody, Robinson, and Davis (hereinafter, collectively "Defendants") and Plaintiff's opposition thereto. The motions are ripe for disposition.

## I. Standard for Summary Judgment

Summary judgment must be rendered "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). It is the responsibility of the party seeking summary judgment to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (*quoting* former Fed. R. Civ. P. 56(c) and 56(e) (1986)). In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Nevertheless, the nonmoving party cannot "'create a genuine issue of material fact through mere speculation or the building of one inference upon another.'" *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008) (*quoting Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir.1985)).

Furthermore, "'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'" *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (*quoting Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 & n.7 (5th Cir. 1992)).

Defendants have filed affidavits and copies of Plaintiff's medical records in support of their motions for summary judgment. Plaintiff has opposed the motions by offering his own "affidavits." The majority of Plaintiff's "affidavits" are not admissible for summary judgment purposes because their content is not sworn to under penalty of perjury and there is no indication that the notary administered an oath to Plaintiff. *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1305-06 (5th Cir. 1988); *id.* at 1306-07 ("[M]erely notarizing [a] signature does not transform [a] document into [an] affidavit that may be used for summary judgment purposes." (*citing Flowers v. Abex Corp.*, 580 F. Supp. 1230, 1233 n.2 (N.D. Ill. 1984))); *see Network Computing Servs. Corp. v. Cisco Sys., Inc.*, 152 F. App'x 317, 321 (4th Cir. 2005); *Goode v. Gray*, No. 3:07CV00189, 2009 WL 255829, at *2 (E.D. Va. Feb. 3, 2009).[3] Plaintiff's affidavit (Docket No. 53) which was received by the Court on December 17, 2009, indicates its contents were acknowledged after an oath was administered. Additionally, on January 4, 2010, the Court received Plaintiff's motion to amend. (Docket No. 61.) Plaintiff attached as an exhibit to the

---

[3] For example, although Plaintiff's Amended Complaint (Docket No. 32) and his affidavit attached to his Objection to Motion for Summary Judgment received on December 17, 2009, bear a notary's seal, there is no indication that the notary administered an oath. Rather, the notary merely acknowledged that the documents were "subscribed" or "signed" in the presence of the notary. (Am. Compl. 14; Pl.'s Obj. Mot. Summ. J. (Docket No. 51) Aff.) "There is a marked difference between acknowledging a signature and signing a document under oath. An acknowledgment merely verifies that the person named executed the document in question. By swearing to a document, on the other hand, one vouches that the contents of the writing are true. A person who swears falsely may be guilty of a felony." *Wisniewski v. Johnson*, 286 S.E.2d 223, 224 (Va. 1982) (internal citation omitted) (*citing* Va. Code § 18.2-434).

3

motion to amend his sworn account of his medical treatment. (Pl.'s Mot. Amend Ex. D.) Therefore, the Court will consider both of the above documents in opposition to the motions for summary judgment.

Of course, the facts offered by affidavit must be in the form of admissible evidence. *See* Fed. R. Civ. P. 56(e). In this regard, the statement in the affidavit "must be made on personal knowledge . . . and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e)(1). Furthermore, summary judgment affidavits must "set out specific facts." Fed. R. Civ. P. 56(e)(2). Therefore, "summary judgment affidavits cannot be conclusory . . . or based upon hearsay." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) (*citing Rohrbough v. Wyeth Labs., Inc.*, 916 F.2d 970, 975 (4th Cir. 1990); *Md. Highways Contractors Ass'n v. Maryland*, 933 F.2d 1246, 1252 (4th Cir. 1991)).[4]

In light of the foregoing principles and submission, the following facts are established for purposes of the motions for summary judgment.[5]

---

[4] For example, Plaintiff swears that when he encountered Captain Robinson on October 18, 2007, "she never expected my condition to worsen but know [sic] for a fact I needed medication." (Pl.'s Aff. ¶ 5.) Although Plaintiff could testify as to why his appearance should have alerted Captain Robinson that he needed medication, he is not competent to testify as to Captain Robinson's state of mind. Similarly inadmissible are Clarence Fowlkes's statements about the cleaning practices in the Jail barber shop in 2007. (Def. Woody's Br. Supp. Summ. J. Ex. 2 ("Fowlkes Aff.").) Fowlkes's statements in this regard do not appear to be based upon personal knowledge, but upon speculation and hearsay. (Fowlkes Aff. ¶ 4 ("Upon the information and belief, this standard practice was the same practice in place in 2007 when Plaintiff had his hair cut.").)

[5] In opposition to the motion for summary judgment filed by Deputy Davis, Plaintiff mentions the discovery he has been pursuing. Plaintiff, however, does not invoke Federal Rule of Civil Procedure 56(f) or demonstrate, by affidavit, that he cannot adequately oppose the motion for summary judgment without further discovery. *See Nguyen v. CNA Corp.*, 44 F.3d 234, 242 (4th Cir. 1995) (explaining that the party seeking relief under Rule 56(f) must file an affidavit that "particularly specifies legitimate needs").

4

## II. Summary of Pertinent Facts

In October of 2007, Plaintiff was confined in the Jail. In the beginning of October of 2007, Plaintiff received a haircut by the Jail barber. (Pl.'s Aff. ¶ 2.) Thereafter, Plaintiff complained to unidentified individuals with the Jail medical department that he was experiencing headaches. (Pl.'s Aff. ¶ 2.)

On the morning of October 18, 2007, Plaintiff encountered Nurse Gaines and Captain Robinson as they were visiting a neighboring inmate. (Pl.'s Aff. ¶ 3; Pl.'s Mot. Amend Ex. D 1.) Plaintiff complained about his condition. (Pl.'s Aff. ¶ 3; Pl.'s Mot. Amend Ex. D 1.) At this time there was swelling on Plaintiff's forehead over his left eye. (Pl.'s Mot. Amend Ex. D 1.) Nurse Gaines looked at Plaintiff's forehead through the bars of his cell. (Pl.'s Mot. Amend Ex. D 1.) Nurse Gaines informed Captain Robinson and Plaintiff that the boil on Plaintiff's head was a symptom that Plaintiff had folliculitis, which was caused by an ingrown hair. (Pl.'s Aff. ¶ 4; Pl.'s Mot. Amend Ex. D 1.) Captain Robinson told Nurse Gaines to provide Plaintiff with five alcohol pads and put hot water on his head, and then dismissed him with a wave of her hand. (Pl.'s Aff. ¶ 5.) Nurse Gaines told Plaintiff to use the hot water and rag to the bring the boil to a head. (Pl.'s Mot. Amend Ex. D 1.) Plaintiff asked Captain Robinson why she did not just use tweezers to remove the ingrown hair. (Pl.'s Mot. Amend Ex. D 1.) Captain Robinson responded, "'Use the alcohol pads and you'll be fine.'" (Pl.'s Mot. Amend. Ex. D 1 (capitalization corrected).)

Following this encounter, the swelling on Plaintiff's head dramatically increased. (Pl.'s Aff. ¶ 14; Pl.'s Mot. Amend Ex. D 2.) Twelve hours later, Plaintiff saw Nurse Brown as she was making rounds to dispense medication. (Pl.'s Aff. ¶ 6; Pl.'s Mot. Amend Ex. D 2.) Nurse

Brown told Plaintiff that he should have been seen at the Jail's medical facility immediately due to the Jail's history of infection. (Pl.'s Aff. ¶ 6.) Nurse Brown prescribed Bactrim (an antibiotic) and Tylenol (a pain reliever) to treat Plaintiff. (Pl.'s Aff. ¶ 6; Pl.'s Mot. Amend. Ex. D 2.)

The next day, October 19, 2007, Plaintiff complained to Deputy Mayo. (Pl.'s Aff. ¶ 7; Pl.'s Mot. Amend Ex. D 2.) By this time, Plaintiff's "left eye and head" were "swollen beyond recognition." (Pl.'s Aff. ¶ 7; Pl.'s Mot. Amend. Ex. D 2.) Deputy Mayo told Plaintiff that he would inform the medical department. (Pl.'s Aff. ¶ 7.) Thereafter, Plaintiff was taken to the medical department, apparently by Deputy Davis, and examined by Dr. Furman. (Def. Davis's Br. Supp. Summ. J. Ex. 1 ¶ 3.) As a result of this examination, Dr. Furman ordered that Plaintiff be immediately taken to the hospital for a CT scan of his face and for an IV antibiotic. (Def. Robinson's Renewed Br. Supp. Summ. J. Ex. 2 ("Furman Aff.") ¶ 3.) Captain Robinson and Dr. Furman had a heated discussion about whether to send Plaintiff to the Medical College of Virginia ("MCV") or Retreat Hospital. (Pl.'s Aff. ¶ 8.) Ultimately, Plaintiff was sent to MCV.[6] (Furman Aff. ¶ 6.)

The CT scan at MCV revealed that Plaintiff had "superficial cellulitis." (Def. Robinson's Br. Supp. Summ. J. Ex. B. ("MCV Record") 4.)[7] MCV staff drained the boil on Plaintiff's scalp and administered intravenous antibiotics for 24 hours, before admitting Plaintiff

---

[6] At some point, Captain Robinson had Deputy Davis bring Plaintiff to her office. (Pl.'s Aff. ¶ 9.) Captain Robinson told Plaintiff, "'You know I tried to help you.'" (Pl.'s Aff. ¶ 9.) Plaintiff also overheard a discussion between Nurse Gaines and Captain Robinson wherein Captain Robinson stated that "she would'nt [sic] lose her job over this situation." (Pl.'s Aff. ¶ 10.)

[7] The MCV Record is not usefully paginated. Therefore, when citing to that record the Court will simply refer to first page as page 1 and consecutively thereafter.

to the hospital. (MCV Record 1, 3.) Cultures from Plaintiff's abscess revealed a "MRSA" (Methicillin-resistant Staphylococcus aureus) infection. (MCV Record 1.) Following his admission to the hospital, Plaintiff's condition rapidly improved. (MCV Record 5.) Plaintiff was discharged back to the Jail on October 23, 2007. (MCV Record 1.) MCV renewed the prescription for Bactrim. (MCV Record 1.) Plaintiff has a scar on his forehead from where the boil was drained. (Pl.'s Mot. Amend Ex. D 3-4.)

### III. Eighth Amendment Analysis

To survive summary judgment on an Eighth Amendment claim, an inmate must demonstrate: (1) that objectively the deprivation suffered or harm inflicted "was 'sufficiently serious,' and (2) that subjectively the prison officials acted with a 'sufficiently culpable state of mind.'" *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (*quoting Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "What must be established with regard to each component 'varies according to the nature of the alleged constitutional violation.'" *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996) (*quoting Hudson v. McMillian*, 503 U.S. 1, 5 (1992)). When an inmate challenges his conditions of confinement, he must show "(1) a serious deprivation of a basic human need; *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); and (2) deliberate indifference to prison conditions on the part of prison officials." *Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir. 1991) (*citing Wilson*, 501 U.S. at 303).

#### A. Captain Robinson

In the context of medical care, an inmate must demonstrate that the prison official was deliberately indifferent to his serious medical needs. *See Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001). In order to demonstrate "that a health care provider's actions constitute

7

deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (*citing Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986)). This standard requires a plaintiff to introduce evidence from which the finder of fact could conclude that "the official in question subjectively recognized a substantial risk of harm" and "that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (*quoting Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997)). A plaintiff can meet his burden with respect to both elements "'in the usual ways, including inference from circumstantial evidence.'" *Id.* (*quoting Farmer v. Brennan*, 511 U.S. 825, 842 (1994)).

Here, Plaintiff contends that Captain Robinson was deliberately indifferent to his need for treatment for his infection. Plaintiff, however, fails to introduce evidence from which a reasonable factfinder could conclude that prior to October 19, 2007, Captain Robinson actually perceived that Plaintiff's infection was so serious that it posed a substantial risk to his health. *See Johnson*, 145 F.3d at 168-69 (concluding doctor's misdiagnosis did not support a claim of deliberate indifference). Plaintiff has not directed the Court to evidence from which a finder of fact could conclude that when Captain Robinson saw Plaintiff on October 18, 2007, either Plaintiff's comments or his physical condition alerted her to the need for a physician's attention or serious medical intervention. Indeed, the record indicates that Captain Robinson agreed with Nurse Gaines's diagnosis that Plaintiff simply had mild folliculitis, which could be treated by

8

warm compresses.[8] While such a misdiagnosis is unfortunate, it cannot support a claim of deliberate indifference. *See Jackson*, 2010 WL 1186282, at *8-9 (granting summary judgment to nurse who believed inmate had folliculitis, rather than a severe staph infection); *Rutland v. Sanders*, 8:09cv01940, 2010 WL 677716, at *6 (D.S.C. Feb. 25, 2010) (same). Plaintiff simply has not introduced evidence from which a reasonable juror could conclude that when Captain Robinson saw Plaintiff on October 18, 2007, she "subjectively recognized a substantial risk of harm" to Plaintiff and "subjectively recognized that [her] actions were 'inappropriate in light of that risk.'" *Lee*, 372 F.3d at 303 (*quoting Rich*, 129 F.3d at 340 n.2 ).

Furthermore, there is no evidence that Captain Robinson was deliberately indifferent to Plaintiff's medical needs after Dr. Furman concluded that Plaintiff's condition was serious and required his transfer to hospital. *Miltier*, 896 F.2d at 851. To the extent Plaintiff contends that Captain Robinson delayed Plaintiff's transfer to the hospital, he has not produced any evidence regarding the extent of the delay or that he sustained a constitutionally cognizable injury because of the delay. *See Webb v. Hamidullah*, 281 F. App'x 159, 166-67 n.13 (4th Cir. 2008) (explaining that where an Eighth Amendment claim is predicated on a delay in the provision of medical care, the plaintiff must demonstrate "'that the delay resulted in substantial harm.'" (*quoting Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000))). Accordingly, Claim 1 will be DISMISSED.

---

[8] "Folliculitis is a superficial skin condition characterized by the inflammation or infection of one or more hair follicles, which typically clears up on its own, without any medical intervention, and commonly appears on the scalp and can be caused by shaving." *Jackson v. Kohlwey*, No. 2:08cv00647, 2010 WL 1186282, at *3 (E.D. Wis. Mar. 19, 2010).

### B. Deputy Davis

Plaintiff contends that Deputy Davis is liable because he should have done something more to ensure that Plaintiff received better or more prompt treatment for his infection. There is no evidence that Deputy Davis delayed or denied Plaintiff any access to medical care. *See Smith v. Smith*, 589 F.3d 736, 739-40 (4th Cir. 2009). Plaintiff fails to demonstrate that by delivering Plaintiff to the medical department and into the care of the Jail's medical professionals, Deputy Davis exhibited deliberate indifference. *Iko v. Shreve*, 535 F.3d 225, 242 (4th Cir. 2008) ("If a prisoner is under the care of medical experts . . . , a nonmedical prison official will generally be justified in believing that the prisoner is in capable hands." (omission in original) (*quoting Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004))). Accordingly, Claim 3 will be DISMISSED.

### C. Sheriff Woody

In Claim 4(a), Plaintiff contends that Sheriff Woody is liable for the allegedly inadequate medical care Plaintiff received at hands of his subordinates, Deputy Davis, Captain Robinson, and Nurse Gaines. In order to establish a claim of supervisory liability under 42 U.S.C. § 1983, a plaintiff must demonstrate three elements:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted; internal quotation marks omitted). "Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the

conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." *Id.* (*quoting Slakan v. Porter*, 737 F.2d 368, 373-74 (4th Cir. 1984)). Plaintiff has failed to introduce evidence from which a reasonable jury could conclude that Captain Robinson, Defendant Davis, or Nurse Gaines were "engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury" to inmates confined in the Jail, much less that Sheriff Woody exhibited deliberate indifference to such conduct. *See Shakka v. Smith*, 71 F.3d 162, 167 (4th Cir. 1995).[9] Accordingly, Claim 4(a) will be DISMISSED.

Next, Plaintiff contends that Sheriff Woody is responsible for the unsanitary practices of the barber and the unsanitary conditions in the Jail that allegedly caused Plaintiff to contract a staph infection. With respect to the objective prong, the Eighth Amendment protects against housing inmates in situations that pose a substantial risk of contracting a serious illness. *See Brown v. Mitchell*, 327 F. Supp. 2d 615, 631 (E.D. Va. 2004) (*citing Helling v. McKinney*, 509 U.S. 25, 33 (1993)). Plaintiff, however, has failed to introduce any evidence regarding the practices of the barber or the conditions of the Jail in general.[10] *See, e.g., Kaucher v. County of Bucks*, 455 F.3d 418, 429 (3d Cir. 2006) (discussing unsanitary conditions that supported jury's verdict against jail officials who were indifferent to the spread of MRSA (*citing Keller v. County of Bucks*, No. 03-4017, 2005 WL 675831, at *1 (E.D. Pa. Mar. 22, 2005)). Moreover, Plaintiff

---

[9] Because Plaintiff has not established a constitutional violation by one of Sheriff Woody's subordinates, he is foreclosed from proceeding against Sheriff Woody on the theory that Sheriff Woody did not adequately train his subordinates. *Brown v. Mitchell*, 308 F. Supp. 2d 682, 701-02 (E.D. Va. 2004) (*citing City of Canton v. Harris*, 489 U.S. 378, 388-92 (1989)).

[10] According to Sheriff Woody, "[e]ach inmate is responsible for the cleanliness of his or her cell or living areas . . . . Sanitation and cleaning equipment and supplies are available for cleaning of the inmate's personal area." (Def. Woody's Br. Supp. Summ. J. Ex. 1 ¶¶ 4, 5.)

has failed to introduce evidence from which a reasonable juror could conclude that Sheriff Woody consciously disregarded any unsanitary conditions that posed substantial risk to Plaintiff's health and safety.[11] *See Farmer*, 511 U.S. at 837. Finally, Plaintiff has failed to introduce evidence that demonstrates unsanitary conditions in the Jail or unsanitary barbering methods actually caused him to contract a staph infection. *See Pearson v. Ramos*, 237 F.3d 881, 886 (7th Cir. 2001) (concluding inmate was incompetent to offer opinion as to causal connection between his lack of exercise and unhealthy gums). Accordingly, Claim 4(b) will be DISMISSED.

## IV. Conclusion

The motions for summary judgment filed by Captain Robinson (Docket Nos. 36, 49), Sheriff Woody (Docket No. 75), and Deputy Davis (Docket No. 95) will be GRANTED. All claims against Captain Robinson, Sheriff Woody, and Deputy Davis will be DISMISSED.

An appropriate Order shall issue.

Date: 9-22-10
Richmond, Virginia

/s/
James R. Spencer
Chief United States District Judge

---

[11] Plaintiff argues that the Jail has a "history of . . . infectious [disease] out-break[s]." (Pl.'s Br. Supp. Obj Def. Davis's Mot. Summ. J. 8 (capitalization corrected).) Plaintiff, however, fails to direct the Court to admissible evidence of such a history.

12