IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**CURTIS L. McCOY,**

    Plaintiff,

v.                                                          Civil Action No. **3:08cv555**

**CAPTAIN ROBINSON,** *et al.,*

    Defendants.

**MEMORANDUM OPINION**

Plaintiff, a Virginia inmate proceeding *pro se,* filed this action. The action is proceeding on Plaintiff's Amended Complaint (Docket No. 32), wherein he alleges that his rights under the Eighth Amendment[1] were violated by Captain Robinson,[2] Nurse Gaines, Sheriff C.T. Woody, and Deputy Davis while Plaintiff was confined in the Richmond City Jail ("the Jail"). Specifically, Plaintiff contends that he is entitled to relief upon the following grounds:

| | |
|---|---|
| Claim 1 | Captain Robinson failed to provide Plaintiff with adequate medical care for a "staph infection 'MSRA Cellulitis.'" (Am. Compl. 2.)[3] |
| Claim 2 | Nurse Gaines failed to provide Plaintiff with adequate medical care for a "staph infection 'MSRA Cellulitis.'" (Am. Compl. 2.) |
| Claim 3 | Deputy Davis failed to ensure that Plaintiff received adequate medical care for a "staph infection 'MSRA Cellulitis.'" (Am. Compl. 2.) |

---

[1] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

[2] Captain Robinson is the Manager of Medical Services at the Jail.

[3] Because Plaintiff did not number the pages of his Amended Complaint, the Court will utilize the page numbers assigned to the Amended Complaint by the Court's CM/ECF system. The Court has corrected the capitalization and punctuation in the quotations to the parties' submissions.

Claim 4   (a)   Sheriff Woody is liable for the inadequate medical care Plaintiff received at the hands of Deputy Davis, Captain Robinson, and Nurse Gaines.
          (b)   Sheriff Woody failed to provide Plaintiff with a clean and sanitary living environment and failed to maintain adequate sanitary standards with respect to the Jail's barber.

By Memorandum Opinion and Order entered on September 22, 2010, the Court granted the motions for summary judgment filed by Woody, Robinson, and Davis and dismissed claims 1, 3, 4(a) and 4(b). The matter is before the Court on Nurse Gaines's Motion for Summary Judgment, Plaintiff's Motion for Partial Summary Judgment, and Plaintiff's Motion for Reconsideration.

## I. Nurse Gaines's Motion for Summary Judgment

### A. Standard for Summary Judgment

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is the responsibility of the party seeking summary judgment to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.*

(*quoting* former Fed. R. Civ. P. 56(c) and 56(e) (1986)). In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

Nevertheless,"'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'" *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (*quoting Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 & n. 7 (5th Cir. 1992)).[4] Here, the Court's disposition of Nurse Gaines's Motion for Summary Judgment will be based primarily upon the material she submitted in support of that motion,[5] Plaintiff's declaration offered in opposition to Nurse Gaines's Motion for Summary Judgment, the declaration Plaintiff offered in support of his Motion for Partial Summary Judgment, the declaration Plaintiff offered in his Rebuttal Brief to Gaines's Rebuttal Brief, and the declaration Plaintiff offered in support of his Motion for Reconsideration.[6] *See* Fed. R. Civ. P. 56(c)(3) ("The Court need consider only cited materials, but it may consider other materials in the record."). The foregoing materials were filed with Nurse Gaines's Motion for Summary Judgment or shortly before or after that motion.[7]

---

[4] The record in the present action exceeds one thousand pages.

[5] In support of her Motion for Summary Judgment, Nurse Gaines has submitted affidavits and copies of Plaintiff's medical records. The Court will also consider the medical records submitted by Plaintiff that were attached to his declarations.

[6] The Court has previously concluded that Plaintiff's Amended Complaint, although notarized, does not constitute admissible evidence. *McCoy v. Robinson*, No. 3:08CV555, 2010 WL 3735128, at *2 n.3 (E.D. Va. Sept. 22, 2010).

[7] The Court also will give limited consideration to Plaintiff's two properly sworn statements submitted in opposition to the Motions for Summary Judgment filed by Nurse

3

Of course, the facts offered by affidavit must be in the form of admissible evidence. *See* Fed. R. Civ. P. 56(c)(4). In this regard, the statement in the affidavit or sworn declaration "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Therefore, "summary judgment affidavits cannot be conclusory . . . or based upon hearsay." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) (*citing Rohrbough v. Wyeth Labs., Inc.*, 916 F.2d 970, 975 (4th Cir. 1990); *Md. Highways Contractors Ass'n v. Maryland*, 933 F.2d 1246, 1252 (4th Cir. 1991)).

For example, Plaintiff swears, "The doctor at [the Medical College of Virginia ("MCV")] told me that I may have died if treatment had been delayed one more day." (Decl. Supp. Pl.'s Rule 54(b) Mot. ¶ 38; *see* Pl.'s Br. Opp'n Def. Gaines's Mot. Summ. J. Pl.'s Decl. ("Pl.'s Decl.") ¶ 40; Pl.'s Mot. Partial Summ. J. Decl. ("May 16, 2011 Decl.") ¶ 12.) Nurse Gaines correctly notes that this statement is inadmissible hearsay.[8] Contrary to Plaintiff's assertions, the foregoing statement is not admissible as a present sense impression or a statement for the purpose of medical diagnosis and treatment. *See United States v. Guevara*, 277 F.3d 111, 127 (2d Cir. 2001) (upholding district court's determination that statements did not constitute present sense impressions "because they were conclusions based upon information she had processed rather than contemporaneous or spontaneous statements that were inherently trustworthy"), *modified in*

---

Gaines's codefendants—Plaintiff's Affidavit (Docket No. 53) and Plaintiff's Motion to Amend Exhibit D (Docket No. 61). *See McCoy*, 2010 WL 3735128, at *2.

[8] Additionally inadmissible as hearsay is Plaintiff's statement that Nurse Brown "told [Plaintiff] that [he] should have been seen at the Jail's medical facility immediately due to the Jail's history of infection." (Decl. Supp. Pl.'s Rule 54(b) Mot. ¶ 13.)

*non-relevant part*, 298 F.3d 124 (2d Cir. 2002); *Field v. Trigg Cnty. Hosp. Inc.*, 386 F.3d 729, 736 (6th Cir. 2004) ("[T]he hearsay exception set forth in Fed. R. Evid. 803(4) applies only to statements made by the one actually seeking or receiving medical treatment."); *see also Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 564 (7th Cir. 1996) ("Rule 803(4) does not purport to except, nor can it reasonably be interpreted as excepting, statements by the person providing the medical attention to the patient." (*citing Gong v. Hirsch*, 913 F.2d 1269, 1273–74 & n.5 (7th Cir. 1990))). In light of the foregoing submissions and principles, the following facts are established for purposes of the motion for summary judgment.

B. **Summary of Pertinent Facts**

1. **Plaintiff's Encounter with Nurse Gaines on October 18, 2007**

In October of 2007, Plaintiff was confined in the Jail. On October 18, 2007, Nurse Gaines and Captain Robinson were walking through the Jail when they encountered Plaintiff. (Pl.'s Decl. ¶ 3.) Plaintiff was separated from Nurse Gaines and Captain Robinson by a set of bars. (Decl. Supp. Pl.'s Rule 54(b) Mot. ¶ 8.) Plaintiff "told them [he] was having severe migraines that had started after a haircut [he] had received at the Jail." (*Id.* ¶ 4.) At the time of the encounter, Plaintiff's "face was swollen from [his] left scalp to [his] neck and [his] left eye was nearly swollen shot." (Pl.'s Decl. ¶ 4.)

Nurse Gaines acknowledges that when she encountered Plaintiff, he had "a boil on his face where the side of his face met the ear" and that "[t]here was swelling around the boil." (Br. Supp. Def. Gaines's Mot. Summ. J. Ex. 1 ("Gaines Aff.") ¶ 3.)[9] Plaintiff "complained to [Nurse Gaines] about pain caused by a boil on his face." (*Id.*) Nurse Gaines "believed the boil was

---

[9] Gaines swears that Plaintiff "did not complain to [her] of severe migraines." (Gaines Aff. ¶ 8.)

5

caused by folliculitis, a common problem suffered by black males as a result of shaving."
(*Id.*) Nurse Gaines explains, "Folliculitis is typically a boil, or raised area in the skin, caused by an ingrown hair. The boil on [Plaintiff's] face appeared to be the result of an ingrown hair in the jaw line, the part of the face where a male would typically shave." (*Id.*) According to Nurse Gaines, "[a]lthough [Plaintiff] did have some swelling around the boil, it was consistent with the swelling one typically sees in a case of folicullitis [sic]. The swelling did not cover his entire face." (*Id.* ¶ 8.)[10]

"Nurse Gaines told [Plaintiff that he] had symptoms of folliculitis caused by an ingrown hair, which she said caused a boil." (Pl.'s Decl. ¶ 6.) Nurse Gaines told Plaintiff "to treat it with a hot compress to bring the ingrown hair to a head." (Gaines Aff. ¶ 3.)[11] Nurse Gaines swears that she "did not notice any symptoms that suggested an infection. [Plaintiff] did not complain of fever or chills." (*Id.* ¶ 4.)[12] Nurse Gaines avers that she "would not be able to tell by looking at [Plaintiff] that he suffered from a staph infection. A staph infection can only be confirmed by a

---

[10] Nurse Gaines denies that "swelling around the boil ma[d]e [Plaintiff's] face swollen beyond recognition." (Gaines Aff. ¶ 8.)

[11] Nurse Gaines explains that "[b]y applying a hot compress to the boil, I anticipated the boil would open allowing the ingrown hair to come to surface." (Gaines Aff. ¶ 6.) "Once the ingrown hair came to the surface, [she] anticipated the boil and accompanying swelling would be reduced and eventually disappear." (*Id.* ¶ 7.)

[12] Plaintiff speculates that if Nurse Gaines "had conducted a brief examination, [it] would have revealed . . . a fever." (Pl.'s Decl. ¶ 46.) Plaintiff, however, admits that he "did not have access to a thermometer and was, therefore, unable to diagnose himself as having a fever." (Pl.'s Rebuttal to Gaines's Rebuttal Br. (Docket No. 177) 1–2.) Moreover, the record does not support's Plaintiff's speculation that he might have had a fever. When Plaintiff was later taken to MCV, he denied experiencing a fever or chills and remained afebrile throughout his stay at MCV. (Br. Supp. Gaines's Mot. Summ. J. Ex. 2 Ex. B, Discharge Summary 1, 3; Pl.'s Rebuttal to Gaines's Rebuttal Br. Ex. 2.)

culture." (*Id.* ¶ 5.) Nevertheless, Plaintiff complains that Nurse Gaines did not "examine the area in question to make any informed decision as to what caused my pain or swelling." (Pl.'s Decl. ¶ 7.)

"Captain Robinson nonchalantly stated, 'He'll be alright' with a wave of her hand." (*Id.* ¶ 10.) "Capt. Robinson told Gaines to give [Plaintiff] 5 alcohol pads." (Pl.'s Decl. ¶ 8.) Nurse Gaines "gave [Plaintiff] several alcohol pads." (May 16, 2011 Decl. ¶ 4.) Plaintiff asked, "'If it's just an ingrown hair, why don't you use a pair of tweezers and pull it out?' Robinson replied, 'Use the alcohol pads and you'll be fine.'" (Pl.'s Decl. ¶ 11.)

### 2. Events Following Plaintiff's Encounter with Nurse Gaines

Shortly after this encounter, Plaintiff talked to inmate Alvin Anderson. (*Id.* ¶ 12.) Anderson told Plaintiff that "Robinson and Gaines were 'full of shit' and that it was more serious than they let on." (*Id.* ¶ 12.)

Plaintiff used the alcohol pad to clean his face and also applied the hot compress to his face. (Pl.'s Rebuttal to Gaines's Rebuttal Br. Pl.'s Decl. Supp. Rebuttal ¶ 5.) "After using the alcohol pads and the hot compress, the swelling got worse." (*Id.* ¶ 7.)

Plaintiff "tried to take a nap, but the pain and pressure on [his] left temple was unbearable, bringing [him] . . . to tears." (Pl.'s Decl. ¶ 14.) Plaintiff purchased Tylenol from the medical department for his pain. (*Id.* ¶ 15.) Plaintiff called home and had his fiancee call the Sheriff's Office to complain about the lack of medical attention Plaintiff had received. (*Id.* ¶ 16.)

Around 10:00 p.m., about twelve hours after Plaintiff had encountered Nurse Gaines and Captain Robinson (*see* Decl. Supp. Pl.'s Rule 54(b) Mot. ¶¶ 12, 13), "Nurse Brown showed up and as soon as she saw [Plaintiff], she had [him] brought to medical" (Pl.'s Decl. ¶ 18). "At that time, the left side of [Plaintiff's] face was severely swollen and was spreading to [his] right eye."

(Pl.'s Decl. ¶ 20.) "Nurse Brown prescribed Bactrim [an antibiotic] and Tylenol for seven days." (Decl. Supp. Pl.'s Rule 54(b) Mot. ¶ 14.) Nevertheless, Plaintiff was not seen by a doctor, nor did Nurse Brown schedule a doctor's appointment for Plaintiff. (*Id.* ¶¶ 15, 16.)

### 3. Events on October 19, 2007 at the Jail

"On October 19, [Plaintiff's] face was swollen beyond recognition and [he] was still in severe pain." (*Id.* ¶ 17.) Plaintiff complained to Deputy Mayo who informed the medical department of Plaintiff's condition. (*Id.* ¶ 18.) Deputy Davis took Plaintiff to the medical department. (*Id.* ¶ 20.)

"Dr. Furman examined [Plaintiff] and ordered that [he] be taken immediately to MCV." (*Id.* ¶ 21.) Dr. Furman believed Plaintiff needed "a CT scan of his face and IV antibiotic." (Br. Supp. Def. Gaines's Mot. Summ. J. Ex. 3 ¶ 3.) Captain Robinson and Dr. Furman "had a heated discussion . . . about [Plaintiff] being admitted to MCV." (Pl.'s Decl. ¶ 25.) Plaintiff heard Captain Robinson "say, 'Treat him and bring him back.'" (*Id.* ¶ 26.) Deputy Davis brought Plaintiff back to his cell for thirty minutes and then took Plaintiff to Captain Robinson's office. (*Id.* ¶ 28, 29.) Captain Robinson and Nurse Gaines were in the office "when Robinson pointed her finger at [Plaintiff] and said 'you know I tried to help you.'" (*Id.* ¶ 30.) Plaintiff was removed from the room while Captain Robinson and Nurse Gaines talked. (*Id.* ¶ 32.) Plaintiff "overheard Robinson say, 'I won't lose my job over this!'" (*Id.* ¶ 33.)

When Sergeant Johnson came to shackle Plaintiff and transport him to MCV, he exclaimed, "'Who beat your ass?'" (*Id.* ¶ 34.)

### 4. Events at MCV

Plaintiff initially was treated in the emergency room at MCV. (Br. Supp. Gaines's Mot. Summ. J. Ex. 2 ("Robinson Aff.") ¶ 4.) Plaintiff's medical records from MCV reflect that when

8

he arrived at MCV his chief complaint was "facial swelling." (*Id.* Ex. B, Discharge Summary 1.[13]) When the abscess on Plaintiff's scalp was lanced and drained, cultures of drainage were positive for Methicillin-resistant Staphylococcus aureus ("MRSA"). (*Id.* at 3; Pl.'s Decl. ¶ 37.) Plaintiff was treated with morphine and 5 different types of antibiotics. (Pl.'s Decl. ¶ 39.) Plaintiff remained hospitalized at MCV for four days. (*Id.* ¶ 43.)

Plaintiff has a scar on his forehead where the doctor cut him to drain the infection. (*Id.* ¶ 41.) Where the doctor made the incision, Plaintiff "had to have gauze packed into [his] head between [his] skull and [his] skin on numerous occasions." (*Id.* ¶ 42.) Additionally, Plaintiff has scars on his forearms from the IV needles used to administer antibiotics. (*Id.* ¶ 44.) Prior to the infection, Plaintiff had 20/20 vision. (*Id.* ¶ 51.) Plaintiff's vision is now 20/25. (*Id.*)

### B. Analysis

To survive summary judgment on an Eighth Amendment claim, an inmate must demonstrate: (1) that objectively the deprivation suffered or harm inflicted "was 'sufficiently

---

[13] These medical records further reflect:

> [Plaintiff] was brought to the emergency room on 10/19 for evaluation of left temple/facial cellulitis presumed secondary to folliculitis.
> Per the patient, he developed a boil on the anterior left scalp following a haircut at the jail "weeks" ago. He denies fevers or chills but does complain of facial swelling.
> Reportedly, on admission to the CDU from the emergency room, the patient's left eyelid was swollen shut secondary to adjacent soft tissue . . . swelling.
> The patient was initially managed in the CDU with ceftriaxone and vancomycin. The patient['s] left facial swelling improved on antibiotics in the CDU; however, he developed extension of swelling to the right side of his face with associated visible periorbital edema. There was no associated erythema noted.
> While in the CDU, the patient also underwent incision and drainage of a left scalp boil.

(Gaines Aff. Ex. B, Discharge Summary 1.)

serious,' and (2) that subjectively the prison officials acted with a 'sufficiently culpable state of mind.'" *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (q*uoting Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). In the context of medical care, an inmate must demonstrate that the prison official was deliberately indifferent to his serious medical needs. *See Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001).

The Supreme Court explicitly rejected an objective standard for deliberate indifference and held:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer v. Brennan*, 511 U.S. 825, 837 (1994). *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Johnson*, 145 F.3d at 168 (*citing Farmer*, 511 U.S. at 837); *Rich v. Bruce*, 129 F.3d 336, 338 (4th Cir. 1997)). Thus, the deliberate indifference standard requires a plaintiff to introduce evidence from which the finder of fact could conclude that "the official in question subjectively recognized a substantial risk of harm" and "that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (*quoting Rich*, 129 F.3d at 340 n.2). A plaintiff can meet his burden with respect to both elements "'in the usual ways, including inference from circumstantial evidence.'" *Id.* (*quoting Farmer*, 511 U.S. at 842).

Here, Plaintiff contends that Nurse Gaines was deliberately indifferent to his need for treatment for his infection. In response to Nurse Gaines's Motion for Summary Judgment, Plaintiff swears that when he encountered Nurse Gaines on October 18, 2007, the swelling was confined to "the left side of [his] head" (Decl. Supp. Pl.'s Rule 54(b) Mot. ¶ 3) and that "the swelling got worse" after this encounter (Pl.'s Rebuttal to Gaines's Rebuttal Br. Pl.'s Decl. Supp. Rebuttal ¶ 7). These specific facts are appropriately considered in assessing Nurse Gaines's Motion for Summary Judgment.

Plaintiff, however, also now swears that his "face was swollen beyond recognition" when he encountered Nurse Gaines on October 18, 2007. (May 16, 2011 Decl. ¶ 3.) Ultimately, this vague description of his physical appearance is insufficient to allow him to survive summary judgment. *See United States v. Roane,* 378 F.3d 382, 400–01 (4th Cir. 2004) (observing that "[a]iry generalities" cannot "stave off summary judgment") (alteration in original; internal quotation marks omitted); *Perez v. Volvo Car Corp.*, 247 F.3d 303, 317 (1st Cir. 2001) (observing that "gauzy generalities are not eligible for inclusion in the summary judgment calculus"); *see also, Gabrielle M. v. Park Forest-Chicago Heights, Ill. Sch. Dist. 163*, 315 F.3d 817, 822 (7th Cir. 2003) (emphasizing the responsibility of parties to submit "'affidavits that cite specific concrete facts'" (*quoting Hadley v. Cnty. of DuPage*, 715 F.2d 1238, 1243 (7th Cir. 1983))). As reflected below, Plaintiff's testimony about *when* his face became swollen beyond recognition has evolved since the Court granted summary judgment to Captain Robinson.

In his response to Captain Robinson's Motion for Summary Judgment, Plaintiff swore that when he encountered Nurse Gaines and Captain Robinson on October 18, 2007, he merely had "swelling on [his] forehead and over [his] eye." (Pl.'s Mot. Amend. Ex. D 1.) Plaintiff

represented that it was not until the next day, October 19, 2007, that his "left eye and head" became "swollen beyond recognition." (Pl.'s Aff. (Docket No. 53) ¶ 7; Pl.'s Mot. Amend. Ex. D 2.) Contrary to Plaintiff's suggestion, he cannot rely upon his own evolving contradictory testimony to establish a genuine issue of material fact. *See Cochran v. Holder*, No. 10-1548, 2011 WL 2451724, at *5 (4th Cir. June 21, 2011); *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 340–41 (4th Cir. 2001). "'[I]t is well established that a genuine issue of fact is not created where the only issue of fact is to determine which of the two conflicting versions of a party's testimony is correct.'" *In re Family Dollar FLSA Litig.*, 637 F.3d 508, 512 (4th Cir. 2011) (*quoting Erwin v. United States*, 591 F.3d 313, 325 n.7 (4th Cir. 2010)). Therefore, the Court will not consider Plaintiff's assertion that his "face was swollen beyond recognition" when he encountered Nurse Gaines on October 18, 2007 (May 16, 2011 Decl. ¶ 3) in assessing the propriety of summary judgment.

The current state of the record before the Court reflects that at the time of Plaintiff's brief encounter with Nurse Gaines on October 18, 2007, Plaintiff had swelling on the left side of his face. According to Nurse Gaines, when she observed Plaintiff through the bars, she believed the swelling on Plaintiff's face was attributable to folliculitis, which could be treated by warm compresses. Nurse Gaines's contemporaneous statements to Plaintiff reflecting this diagnosis provide direct evidence of her subjective state of mind, which reflect that she did not perceive that Plaintiff had an infection or other serious medical condition. *See Mata v. Saiz*, 427 F.3d 745, 760 (10th Cir. 2005). While Nurse Gaines's incorrect or incomplete diagnosis in hindsight is truly regrettable, it cannot support a claim of deliberate indifference. *Jackson v. Kohlwey*, No. 08-CV-647, 2010 WL 1186282, at *8–9 (E.D. Wis. Mar. 19, 2010) (granting summary

judgment to nurse who incorrectly believed inmate had folliculitis, rather than a severe staph infection); *Rutland v. Sanders*, 8:09-1940-SB, 2010 WL 677716, at *6 (D.S.C. Feb. 25, 2010) (same). Plaintiff has failed to introduce evidence from which a reasonable factfinder could conclude that when he encountered Nurse Gaines on October 18, 2007, she actually perceived that he had an infection or any medical need that was so serious that it posed a substantial risk to his health. *See Johnson*, 145 F.3d at 168–69 (concluding doctor's misdiagnosis did not support a claim of deliberate indifference).

Plaintiff insists that Nurse Gaines's failure to conduct any examination is itself sufficient to support a claim of deliberate indifference. *See Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997) (noting that a layperson would recognize as sufficiently serious a "purulent draining infection" accompanied by extreme pain and high fever). In defining the contours of the deliberate indifference standard, the Supreme Court observed that a prison official "would not escape liability if the evidence showed that he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist." *Farmer*, 511 U.S. at 843 n.8. Plaintiff, however, does not direct the Court to evidence that suggests that Nurse Gaines actually suspected that his swelling was the product of a serious infection. Although Plaintiff informed Nurse Gaines that he had been experiencing severe migraines since he had received a haircut, neither Plaintiff nor the record indicates that migraine headaches are commonly associated with a MRSA infection. Moreover, according to Nurse Gaines, she did not notice that Plaintiff was experiencing any symptoms that suggested to her that Plaintiff was experiencing an infection, such as a fever or chills. (Gaines Aff. ¶¶ 4, 5.)

13

Plaintiff persists that Nurse Gaines must have recognized that Plaintiff required antibiotics because twelve hours later Nurse Brown perceived that Plaintiff's condition required antibiotics. Plaintiff's condition, however, had significantly deteriorated by the time Plaintiff saw Nurse Brown.[14] Plaintiff acknowledges that, after seeing Nurse Gaines, he used a hot compress and alcohol pad on his face, but "the swelling got worse." (Pl.'s Rebuttal to Gaines's Rebuttal Br. Pl.'s Decl. Supp. Rebuttal ¶ 7.) By the time Plaintiff saw Nurse Brown, the left side of his face was "severely swollen," the swelling was spreading to the right side of his face (Pl.'s Decl. ¶ 20), and he "was practically cryin[g]." (Pl.'s Mot. Am. Ex. D 2.) Thus, Nurse Brown's actions are not particularly probative of the risks that Nurse Gaines perceived when she briefly viewed Plaintiff twelve hours earlier. While Nurse Gaines may have been negligent in not perceiving a significant risk to Plaintiff's health, Plaintiff has failed to adduce evidence that indicates Nurse Gaines acted with deliberate indifference. *Johnson*, 145 F.3d at 168–69 ("Without evidence that the doctors 'bridged the gap' between the symptoms and the tumor itself, Johnson cannot survive summary judgment."); *see Farmer*, 511 U.S. at 838 ("[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.").

Lastly, Plaintiff contends that even if Nurse Gaines did not perceive that his boil warranted significant medical intervention, she was indifferent to his complaints that he was experiencing severe migraine headaches. Once again, however, Plaintiff fails to demonstrate that

---

[14] Even at this juncture, Nurse Brown did not perceive that Plaintiff required any medical care beyond the provision of antibiotics and Tylenol.

14

Nurse Gaines perceived that her isolated failure to provide prompt care for Plaintiff's headaches posed a substantial risk of serious harm to Plaintiff.[15] *See Guiden v. Wilson*, 344 F. App'x 980, 981 (5th Cir. 2009) (concluding failure to provide emergency medical care to inmate who complained of infected boil and headaches did not violate the Eighth Amendment); *Perry v. Mills*, No. 7:07-cv-00445, 2007 WL 2821803, at *3 (W.D. Va. Sept. 27, 2007) (concluding unspecified number of migraines and nosebleeds are insufficient to demonstrate the existence of imminent danger of serious physical harm); *Murphy v. Snedecker*, No. 7:07CV0273, 2007 WL 2220556, at *1 n.5 (W.D. Va. Aug. 1, 2007) ("Allegations of a few migraine headaches are not sufficiently serious to constitute a serious medical need." (*citing Webb v. McKnight*, No. 7:06CV00734, 2006 WL 3761382, at *2 (W.D. Va. Dec. 20, 2006))). Again, Nurse Gaines may have been negligent in treating Plaintiff, but Plaintiff has failed to adduce evidence from which a reasonable trier of fact could conclude that Nurse Gaines's actions amounted to deliberate indifference. *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (stating that in order to demonstrate "that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." (*citing Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986))). Accordingly, Claim 2 will be DISMISSED. Nurse Gaines's Motion for Summary Judgment (Docket No. 165) will be GRANTED.

---

[15] Plaintiff acknowledges that despite any action by Nurse Gaines, he was able to purchase Tylenol for his headaches from the medical department—the same medication Nurse Brown later prescribed. (Pl.'s Decl. ¶¶ 15, 19.)

## II. Outstanding Matters

### A. Plaintiff's Motion for Partial Summary Judgment

As explained above, Plaintiff fails to demonstrate that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Accordingly, Plaintiff's Motion for Partial Summary Judgment (Docket No. 162) will be DENIED.

### B. Plaintiff's Motion for Reconsideration

Plaintiff has moved under Federal Rule of Civil Procedure 54(b) for the Court to revise the Court's grant of summary judgment to Defendants Woody, Davis, and Robinson.[16] The power to grant relief under Rule 54(b) "is committed to the discretion of the district court." *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003) (*citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983)). Granting a motion for reconsideration generally should be limited to instances such as the following:

> [T]he Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension. . . . [or] a controlling or significant change in the law or facts since the submission of the issue to the Court [has occurred]. Such problems rarely arise and the motion to reconsider should be equally rare.

*Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983); *accord United States v. Smithfield Foods, Inc.*, 969 F. Supp. 975, 977 (E.D. Va. 1997); *see Tully v.*

---

[16] Rule 54(b) states in pertinent part:

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b).

16

*Tolley*, 63 F. App'x 108, 113 (4th Cir. 2003) (concluding district court properly denied Rule 54(b) motion where new evidence could have been discovered with due diligence). Reconsideration is also appropriate when "'the prior decision was clearly erroneous and would work manifest injustice.'" *Am. Canoe Ass'n*, 326 F.3d at 515 (*quoting Sejman v. Warner–Lambert Co.*, 845 F.2d 66, 69 (4th Cir. 1988)). The courts do not entertain motions to reconsider which ask the Court merely to "rethink what the Court had already thought through—rightly or wrongly." *Above the Belt, Inc.*, 99 F.R.D. at 101.

Plaintiff has not satisfied the relevant criteria for reconsideration. For example, Plaintiff suggests that reconsideration of the previous decisions on summary judgment is appropriate because he has new evidence in the form of his Declaration in Support of Plaintiff's Rule 54(b) Motion that the Court must consider. Plaintiff, however, fails to explain, as he must, why he could not have introduced the information in his Declaration prior to the adjudication of the previous motions for summary judgment. *See Tully*, 63 F. App'x at 113; *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985) (concluding trial court properly denied plaintiff's request for reconsideration of summary judgment where only new evidence plaintiff submitted was his own affidavit). The remainder of Plaintiff's motion merely seeks "to put a finer point on his old arguments and dicker about matters decided adversely to him." *Shanklin v. Seals*, No. 3:07cv319, 2010 WL 1781016, at *3 (E.D. Va. May 3, 2010) (internal quotation marks omitted). Accordingly, Plaintiff's Motion for Reconsideration (Docket No. 174) will be DENIED.

## III. Conclusion

Nurse Gaines's Motion for Summary Judgment (Docket No. 165) will be GRANTED. Plaintiff's Motion for Partial Summary Judgment (Docket No. 162) and Plaintiff's Motion for Reconsideration (Docket No. 174) will be DENIED. The action will be DISMISSED.

An appropriate Order shall issue.

Date: 11-28-11
Richmond, Virginia

James R.
Chief United States District Judge